# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

**SEALED**

| United States of America | ) | |
| v. | ) | |
| | ) | Case No. |
| | ) | 1:19-mj-0349 |
| Scott Alan Genung | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __March 5, 2019__ in the county of __Marion__ in the __Southern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Daniel Shirley, SA, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 03/26/2019

*Judge's signature*

City and state: Indianapolis, IN

Mark J. Dinsmore, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF COMPLAINT

I, Daniel Shirley, being duly sworn under oath, states as follows:

## INTRODUCTION

1. Your Affiant, Special Agent Daniel Shirley, is employed by the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and has been so employed since December 2000.

2. Your Affiant is a sworn Federal Agent empowered under the laws of the United States to investigate violations of Federal firearm laws and has focused attention on the detection and apprehension of individuals violating both Federal and State laws, including, but not limited to, Title 18, United States Code, Section 922.

3. Your Affiant regularly conducts firearm related investigations and has experience conducting interviews, making arrests and executing search warrants; which have resulted in the seizure of both narcotics and firearms. Your Affiant completed an approximately ten week Basic Criminal Investigator Training Program and an approximately fourteen week New Professional Training Program with the ATF National Academy.

4. Your Affiant has personally conducted and/or assisted in numerous criminal investigations involving weapons violations, and has received special training in the enforcement of firearms laws concerning weapons violations as found in Title 18 of the United States Code. I have testified in judicial proceedings and prosecutions for violations of firearm and weapon laws. I have had conversations with convicted felons who possess firearms concerning their methods of operation in the course of investigative interviews and have participated in the execution of numerous search warrants relating to illegal firearm and

1

weapon violations.

5. Based upon your Affiant's training and experience and the facts set forth herein, your Affiant submits there is probable cause to believe that SCOTT GENUNG, a convicted felon, was in possession on the dates described ~~above~~ below [handwritten annotations], and continues to be in possession of firearms and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

6. The information contained in the following numbered paragraphs is either personally known to your Affiant, relayed to your Affiant by other law enforcement officers, or contained in law enforcement reports and other documents reviewed by your Affiant.

## BACKGROUND OF INVESTIGATION

7. The ATF Indianapolis Field Office began a criminal investigation into Scott Alan GENUNG (W/M, DOB XX/XX/1976, SSN XXX-XX-6411) (hereinafter "GENUNG").

8. A public records search revealed a LinkedIn profile for GENUNG disclosing that he is employed as "President" of ROMAR located at 8247 Indy Court in the City of Indianapolis, Indiana, and also lists employment as "Customer Service" for G2 Sport Products which is also located at 8255 Indy Court in the City of Indianapolis, Indiana. These business addresses are physically located in the same building, and share common areas and access from the interior of each. LinkedIn is a website used for professional networking and contains individual profiles such as the one used by GENUNG.

2

## INVESTIGATION

9. Your affiant obtained a certified conviction record from Hamilton County Indiana Circuit Court for Scott GENUNG for a felony conviction for Conspiracy to Commit Dealing in a Schedule I, II, or III Controlled Substance in Hamilton County Indiana under cause number 29C01-0103-CF-20. GENUNG was sentenced to Twenty (20) years' incarceration at Indiana Department of Corrections relating to this conviction. A diligent search of public records failed to disclose an expungement or restoration of rights for this conviction.

10. Your Affiant has conducted surveillance of G2 and GENUNG's residence, as well as overseen six (6) undercover operations at G2, where undercover law enforcement officers (hereinafter UC) posed as customers. During surveillance, your affiant has observed GENUNG accessing G2 outside the listed business hours, opening the store, and closing the store. Some of these observations have been made when no other persons were observed to be present at either G2 or ROMAR which are connected on the interior of the building.

11. GENUNG has been present and working at G2 during every undercover operation. These interactions have happened on different days of the week, and at differing times during business hours. During various UC interactions, GENUNG provided business cards for G2 and told UC law enforcement officers, as well as other customers present during the UC operations, to call him if they needed assistance with ordering firearms.

12. Law enforcement officers have observed GENUNG on multiple occasions during undercover operations to be carrying a firearm on his person while working in the store.

13. On February 27th, 2019, a UC, posing as a customer, met GENUNG at G2. GENUNG showed the UC multiple firearms that were displayed for sale and subsequently sold the UC one (1) firearm; a "Radical Firearms" 5.56 semiautomatic rifle.

14. On February 28th, 2019, a UC law enforcement officer, posing as a customer, met GENUNG at G2. The UC officer told GENUNG that he was interested in a handgun to shoot and perhaps another handgun to carry. GENUNG then retrieved a Sig-Sauer P365 9mm pistol from the firearms display case to show to the UC. While GENUNG was holding this firearm, he told the UC, "This little guy here has a standard capacity of ten rounds." GENUNG further stated additional details about the firearm and said, "This is my favorite gun right now...this P365..." GENUNG showed the UC multiple firearms that were displayed for sale in the FFL, and subsequently sold the UC two (2) "Glock" 9mm pistols and two (2) boxes of ammunition (CCI 9mm and Sig Sauer 9mm).

15. During this operation, the UC observed that GENUNG was carrying a concealed firearm in a holster on his right side that was partially covered by clothing. While conversing about options for carrying a firearm, GENUNG motioned toward his right hip and explained how he preferred to carry a firearm in a holster. GENUNG stated that, "I don't carry it right here, I carry back right here..." while motioning to various areas on the right side of his waistband and back. The UC asked about inside-the-pants holsters, to which GENUNG replied, "I don't have an inside-the-pant one on right now..." and explained how he adjusted his holsters to draw a handgun more quickly. While conversing about holsters and carry options, GENUNG briefly lifted the outside layer of his clothing, revealing a

holster on his waistband near his hip, containing a black handgun with a silver or gray barrel visible inside the holster.

16. The UC asked GENUNG if there was a holster manufacturer he liked, to which GENUNG replied, "I have a whole bunch that I use" while picking up several holsters from the wall displays to show the UC. While showing one type of holster to the UC, GENUNG stated that these type of holsters are the most comfortable for "the guns that I carry." GENUNG further showed the UC specific aspects of the various holsters that made carrying handguns more comfortable.

17. During this same UC operation, the UC heard GENUNG and an unknown customer discussing a shotgun on display with a sign describing it was a double barrel shotgun with a 16-round capacity. The UC heard GENUNG tell the customer, "It's not as heavy as you think…I've held it and fired it full."

18. On March 5th, 2019, a UC, posing as a customer, met GENUNG at G2. During the interaction, GENUNG showed the UC multiple firearms that were displayed for sale.

19. GENUNG obtained a 9mm Sig-Sauer P365 pistol from the display cabinet and handed it to the UC. GENUNG explained specific details about the pistol to the UC as he was viewing it. The UC asked GENUNG if the pistol "shoots nice", to which GENUNG replied, "Oh god they're beautiful…they really are…" GENUNG further explained that he preferred the pistol with the extended magazine.

20. The UC observed that GENUNG was openly carrying a Sig Sauer pistol in a holster on his right side while working in the store, and was observed by the UC handling multiple firearms that were displayed for sale in the FFL, handing them to potential customers.

5

21. GENUNG made further conversation about the type of firearm that he carries in the store at work and the type(s) of firearms he carries when he isn't working. GENUNG showed the UC a .380 caliber pistol and a 9mm Sig Sauer pistol as he compared the two firearms. The UC asked if he, GENUNG, would carry a .380 pistol. GENUNG responded, "I used to carry .380's before this…" while pointing to the 9mm Sig-Sauer pistol that he was showing the UC.

22. The UC indicated that he was uncertain about which firearm to purchase, and stated, "I notice you carry a full size…do you think I'm stupid to buy a small pistol?" GENUNG replied, "There is a different gun for different situations…I don't always carry a full size pistol…But when I'm in a gun shop and people might come in and start shooting at me I want more bullets…" GENUNG continued, "The gun I use for carry is a mid-size…It's not a full size…It's not a compact…"

23. The UC purchased one (1) "Taurus" 9mm pistol, one (1) "Smith & Wesson" .38 caliber revolver, and two (2) boxes of ammunition (CCI 9mm and American Eagle .38 caliber).

24. The UC asked for GENUNG'S cell phone number so that he could call regarding a future purchase they discussed. GENUNG responded, "On that card you've got the shop number, and those (numbers) are the owners…But if you call the shop or email the shop it goes to everybody…but when you call the shop phone it makes my cell phone ring anyways…" The UC indicated that he would call the number and ask for "Scott", to which GENUNG replied, "If you don't get me just be like 'hey where is Scott…?'" GENUNG further added, "I'm the only one who knows what I'm doing anyways…"

25. On March 8th, 2019, two UCs, posing as customers, met GENUNG at G2. GENUNG showed the UCs multiple firearms that were displayed for sale and subsequently sold one of the UCs one (1) "Riley Defense" 7.62 semiautomatic rifle. While viewing this firearm, the UC intentionally struggled to insert the firearms magazine into the firearm in view of GENUNG, and upon seeing this GENUNG walked the UC through how to load and unload the firearm. Additionally, the UCs observed GENUNG complete the purchase of two pistols utilizing the online NICS system to an unknown male customer. GENUNG had purchasers complete an electronic version of ATF Form 4473 on an iPad. GENUNG completed the electronic NICS check, ran cash register operations, and entered customer information into a computer that was located at the firearms display counter facing the front of the store.

26. During this same UC operation, one of the UCs inquired about a Stand Manufacturing, model DP-12, double barrel pump shotgun that was on a display on a counter with a video playing that demonstrated operation of the firearm. The UC asked GENUNG if he had fired one of these firearms before, to which GENUNG replied that he had.

27. During this operation, GENUNG was observed to be openly carrying a Sig Sauer pistol in a holster on his right side while working in the store. One of the UCs asked GENUNG why he was wearing an old pistol on his hip when he had all of the nice firearms in the store. GENUNG replied that he was in the shop all day bumping into the counter and didn't want to be wearing his good stuff and he stated, "I leave my nice stuff at home".

7

28. None of the firearms or ammunition that were purchased by the UCs are manufactured in the State of Indiana, and by virtue of their presence in Indiana they had to have traveled in and affected interstate commerce.

29. Your affiant has examined the firearms purchased by the UCs and determined that the firearms appear to be designed to or capable of expelling a projectile by the action of an explosive. Six (6) of the firearms purchased by the UCs are newly manufactured firearms with the undercover purchase being the first time that these firearms have been sold to a retail purchaser.

30. Based upon your Affiant's training and experience and the facts set forth herein, your Affiant submits there is probable cause to believe that SCOTT GENUNG, a convicted felon, was in possession on the dates described above, and continues to be in possession of firearms and ammunition, in violation of Title 18, United States Code, Section 922(g)(1).

Daniel Shirley
Special Agent, Bureau of
Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me this 26th day of March, 2019.

The Hon. Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

8